IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

────────────────────────────────────

JARRETT BANYAN,

                    Plaintiff,

                                        Civil Action No.
        v.                              9:05-CV-0500 (DNH/DEP)

GREGORY EASTWOOD, Director, SUNY
Upstate Medical University Hospital, and
Estate of JOHN HALVERSON, M.D.,

                    Defendants.

────────────────────────────────────

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF:

JARRETT BANYAN, *pro se*


FOR DEFENDANT:

HON. ELIOT SPITZER              SENTA B. SIUDA, ESQ.
Office of Attorney General      Assistant Attorney General
State of New York
615 Erie Boulevard West
Suite 102
Syracuse, New York 13204


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

        Plaintiff Jarrett Banyan, a New York State prison inmate who is

proceeding *pro se* and *in forma pauperis*, has commenced this civil rights action pursuant to 42 U.S.C. § 1983, claiming deprivation of his constitutional rights.  In his complaint, plaintiff alleges that John Halverson, M.D., a private physician retained by corrections officials to operate on him, was both negligent in the performance of that surgery and deliberately indifferent to his serious medical needs.  Banyan also alleges that defendant Gregory L. Eastwood, as the director of the hospital facility at which the surgery was performed, is accountable for the constitutional deprivation suffered by virtue of his having allegedly hired defendant Halverson, and because of his awareness of prior complaints of negligence lodged against that physician.

Defendant Eastwood, the only defendant thus far served in the action, has moved seeking dismissal of plaintiff's claims against him. As a basis for his motion, defendant Eastwood cites plaintiff's failure to plead facts which, if proven, would establish his personal involvement in any constitutional deprivations experienced by the plaintiff.  Because plaintiff's claims against Eastwood appear to be grounded in negligence and premised upon a theory of *respondeat superior*, neither of which is recognized as a basis for liability under section 1983, I recommend that

2

his motion be granted.

I.    BACKGROUND[1]

Plaintiff is a New York State prison inmate entrusted to the custody of the New York State Department of Correctional Services ("DOCS"). Amended Complaint (Dkt. No. 4) ¶ 2. At the times relevant to his complaint, plaintiff was incarcerated at the Mid-State Correctional Facility ("Mid-State"), located in Marcy, New York. *Id.*

Prior to his transfer into Mid-State, plaintiff developed a hernia in his stomach. Amended Complaint (Dkt. No. 4) ¶ 6. As a result of his condition, following his arrival at Mid-State plaintiff was referred to the SUNY Upstate Medical University Hospital ("SUNY Upstate"), located in Syracuse, New York, where he was seen on or about June 23, 2003 by John Halverson, M.D. *Id.* ¶¶ 6-7. Based upon his examination, Dr. Halverson diagnosed the plaintiff as suffering from an incisional hernia, and accordingly scheduled him for surgery. *Id.*

In an interview held during the first week of August, 2003, Dr. Halverson described for plaintiff the surgical procedure which was to be

---

[1]    In light of the procedural posture of this case the following facts are taken directly from plaintiff's complaint, the allegations of which are accepted as true for purposes of defendant Eastwood's motion. *Burke v. Gregory*, 356 F. Supp.2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.).

undertaken to address his hernia.  Amended Complaint (Dkt. No. 4) ¶

10.  During that consultation, Dr. Halverson explained that he intended

to cover Banyan's entire stomach with mesh.  *Id.*  Based upon that

conversation plaintiff signed a form authorizing the surgical procedure,

which was subsequently performed on or about September 11, 2003.

*Id.* ¶ 11.

Following his release from SUNY Upstate on or about September

19, 2003, plaintiff began to experience discomfort in his stomach area.

Amended Complaint (Dkt. No. 4) ¶¶ 12-13.  As a result of his

complaints of ongoing pain plaintiff was seen by Dr. Marvin S.

Rabinowitz, who is apparently a DOCS physician employed at Mid-

State.  *Id.* ¶ 13.  Following an examination and testing, including a CAT

scan, plaintiff was again referred by the DOCS to SUNY Upstate, where

a second operation was performed by Dr. Richard J. Wells on or about

November 15, 2004 to address the recurrence of plaintiff's stomach

hernia.  *Id.* ¶ 14.  During conversations occurring over the period

leading up to that second operation, plaintiff learned from Dr. Wells that

Dr. Halverson had not covered his entire stomach with mesh, as

originally contemplated.[2]  Amended Complaint (Dkt. No. 4) ¶ 15.

After undergoing his second stomach surgery, plaintiff continued to experience pain, apparently resulting in further in-house medical examination by Dr. Rabinowitz, and ultimately a third referral to SUNY Upstate.  Amended Complaint (Dkt. No. 4) ¶¶ 16-18.  After confirming the existence of a third stomach hernia, on April 8, 2005 Dr. Wells ordered additional medications and a stomach brace, in anticipation of yet another operation.  *Id.* ¶ 18.

## II.   PROCEDURAL HISTORY

Plaintiff commenced this action on April 22, 2005.  Dkt. No. 1.  Upon routine review of plaintiff's complaint and an accompanying *in forma pauperis* application, District Judge David N. Hurd issued an order requiring, *inter alia*, the submission of an amended complaint containing allegations disclosing the existence of a potential constitutional violation, as distinct from ordinary, medical malpractice not actionable under 42 U.S.C. § 1983.  Dkt. No. 3.  An amended

---

[2]     According to the plaintiff, Dr. Halverson inserted only a three by six centimeter section of mesh during his first operation whereas, according to Banyan's estimate, the size of a "normal stomach for the average person" is twenty-eight by twenty-six centimeters.  Amended Complaint (Dkt. No.  4) ¶ 20.

complaint was subsequently submitted by the plaintiff and received by

the court on June 3, 2005.  Dkt. No. 4.  In that amended complaint

plaintiff has named, as defendants, Gregory L. Eastwood, Director of

SUNY Upstate Medical Center, as well as the Estate of Dr. John

Halverson, who is apparently deceased.  Dkt. No. 4.  Plaintiff's

amended complaint asserts various causes of action sounding in

negligence and malpractice, as well as a constitutional claim for

deliberate indifference to his serious medical needs, and seeks

recovery of $25 million in compensatory damages and $25 million in

punitive damages against each of the two named defendants.[3]  Dkt. No.

4.

In response to plaintiff's amended complaint Gregory L.

Eastwood, the only of the two defendants to have either been served or

voluntarily appeared in the action, has interposed a motion seeking

dismissal of plaintiff's claims against him, asserting lack of personal

involvement as a basis for his motion.[4]  Dkt. No. 13.  Despite passage

---

[3]     Plaintiff's application for leave to proceed *in forma pauperis* was granted, and his amended complaint approved, by order issued by District Judge David N. Hurd on July 6, 2005.  Dkt. No. 6.

[4]     The summons issued by the clerk to the plaintiff, and forwarded to the United States Marshal's office for service, was returned unexecuted on January 9, 2006 as

of the deadline for doing so, plaintiff has submitted no papers in opposition to defendant Eastwood's motion, which is now ripe for determination and has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.   <u>DISCUSSION</u>

   A.   <u>Legal Significance of Plaintiff's Failure To Oppose Defendants' Motion</u>

   Confronted with a motion by defendant Gregory Eastwood seeking dismissal of plaintiff's complaint as against him, Banyan has not provided the court with the benefit of any argument as to why that motion should not be granted.  Before turning to the merits of defendant Eastwood's motion, I must first consider the legal consequences, if any, associated with that failure.

   Although the plaintiff has filed no opposition to defendants' motion to dismiss, I am not precluded from recommending disposition of the

---

relates to both of the named defendants.  Dkt. No. 11.  In moving to dismiss plaintiff's complaint, defendant Eastwood has apparently decided to waive the requirement of service and voluntarily appear in the action.  To date, however, there has been no appearance by or on behalf of the other defendant, the estate of Dr. John Halverson.

motion without the benefit of his submission.  *See*, *e.g.*, *White v. Mitchell*, No. 99-CV-8519, 2001 WL 64756, at *1 (E.D.N.Y. Jan. 18, 2001).  Motions to dismiss test only the legal sufficiency of the complaint; accordingly, while a party should be given reasonable opportunity to respond to such a motion the court can determine the complaint's sufficiency as a matter of law based on its own reading of the complaint and knowledge of the relevant case law.  *McCall v. Pataki*, 232 F.3d 321, 322-23 (2d Cir. 2000).

    While under this court's local rules a party's failure to respond to a properly filed motion can be considered as indicative of the lack of any opposition, before granting the motion the court must first make a threshold finding that the moving party has met its burden demonstrating entitlement to the relief requested.  N.D.N.Y.L.R. 7.1(b)(3); *see also McCall*, 232 F.3d at 322-23 (holding that plaintiff's failure to respond to motion to dismiss in and of itself could not constitute basis for dismissal if plaintiff's complaint stated a claim for relief); *White*, 2001 WL 64756, at n.2 (citing *McCall*).  Accordingly, the court must review the pending motion for facial sufficiency before the relief sought can be awarded, notwithstanding plaintiff's failure to

8

submit any opposition to the motion.

      B.    <u>Rule 12(b)(6) Standard</u>

      A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading, applying a standard which is neither controversial nor rigorous in its requirements.  Under that provision, a court may not dismiss a complaint unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him [or her] to relief." *Davis v. Goord*, 320 F.3d 346, 350 (2d Cir. 2003) (citing, *inter alia*, *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957)).  In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true, and draw all inferences in favor of the non-moving party.  *Cooper*, 378 U.S. at 546, 84 S. Ct. at 1734; *Miller v. Wolpoff & Abramson, LLP*, 321 F.3d 292, 300 (2d Cir.), *cert. denied*, 540 U.S. 823, 124 S. Ct. 153 (2003); *Burke v. Gregory*, 356 F. Supp.2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.).  The court's determination as to the sufficiency of a complaint must take into consideration the fact that the governing rules require only that the defendant be afforded "fair notice

9

of what the plaintiff's claim is and the grounds upon which it rests."

*Conley*, 355 U.S. at 47, 78 S. Ct. at 103; *see Phillips v. Girdich*, 408

F.3d 124, 127-29 (2d Cir. 2005).

When assessing the sufficiency of a complaint against this

backdrop, particular deference must be afforded to a *pro se* litigant; a

court must generously construe a *pro se* plaintiff's complaint when

determining whether it states a cognizable cause of action.  *Davis*, 320

F.3d at 350 (citation omitted).  A complaint drafted by an uncounselled

plaintiff should not be dismissed unless "it is clear that the plaintiff

would not be entitled to relief under any set of facts that could be

proved consistent with the allegations."  *Boddie v. Schnieder*, 105 F.3d

857, 860 (2d Cir. 1997) (citation omitted).  In the event of a perceived

deficiency in a *pro se* plaintiff's complaint, a court should not dismiss

without granting leave to amend at least once if there is any indication

that a valid claim could potentially be stated.  *Branum v. Clark*, 927

F.2d 698, 704-05 (2d Cir.1991); *see also* Fed. R. Civ. P. 15(a) (leave to

amend "shall be freely given when justice so requires").

### C.    Personal Involvement

The sole basis for defendant Eastwood's dismissal motion is the

10

contention that in his complaint, plaintiff has failed to articulate a proper

basis for finding that he was personally involved in, and thus should be

held accountable for, the constitutional deprivations alleged.[5]

Personal involvement of defendants in alleged constitutional

deprivations is a prerequisite to an award of damages under section

1983. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v.*

*Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v.*

*Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S.

1087, 98 S. Ct. 1282 (1978)).  In order to prevail on a section 1983

cause of action against an individual, a plaintiff must show some

tangible connection between the constitutional violation alleged and

that particular defendant.  *See Bass v. Jackson*, 790 F.2d 260, 263 (2d

_____

[5]     An obvious question which arises from reviewing plaintiff's complaint is
whether the two named defendants, neither of whom is a DOCS employee, can be
sued under section 1983, and specifically whether the requisite state action can be
established.  As a private physician retained by the DOCS, Dr. Halverson could
potentially be viewed as a state actor, for purposes of section 1983. *West v. Atkins*,
487 U.S. 42, 54-57, 108 S. Ct. 2250, 2258-60 (1988); *compare Sykes v. McPhillips*,
412 F.Supp.2d 197, 203-04 (N.D.N.Y. 2006) (Hurd, J.) and *Nunez v. Horn*, 72
F.Supp.2d 24, 27 (N.D.N.Y. 1999) (Hurd, J.)).  By contrast defendant Eastwood,
who is not alleged to have been either a DOCS employee or retained by the DOCS
as a consultant, is named as a defendant only by virtue of having hired Dr.
Halverson and failed to act upon complaints of his negligence.  In such
circumstances the relationship between defendant Eastwood and state action is far
more attenuated, and it is questionable whether under these facts plaintiff would be
able to establish that Eastwood was acting under color of state law at the relevant
times. *See Davis v. Cole-Hoover*, No. 03CV550, 2004 WL 1574649, at *8-*9
(W.D.N.Y. June 14, 2004).

Cir. 1986).

A supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor – there is no *respondeat superior* liability under section 1983. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501. A supervisory official can, however, be liable in one of several ways: 1) the supervisor may have directly participated in the challenged conduct; 2) the supervisor, after learning of the violation through a report or appeal, may have failed to remedy the wrong; 3) the supervisor may have created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) the supervisor may have been grossly negligent in managing the subordinates who caused the unlawful event; or 5) the supervisor may have failed to act on information indicating that unconstitutional acts were occurring. *Richardson*, 347 F.3d at 435; *Wright*, 21 F.3d at 501; *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986).

Plaintiff's amended complaint makes it clear that his allegations against defendant Eastwood arise principally if not exclusively from his position as Director of SUNY Upstate. Defendant Eastwood is alleged

to have been "responsible because he is the Director of SUNY Up-

State [sic] Medical University Hospital, and directly in-charge of the

hiring & firing of employee[s]" at the hospital, thereby giving rise to

"Respondeat Superior" liability.  Amended Complaint (Dkt. No. 4) ¶ 20.

Since no *respondeat superior* liability lies under section 1983, plaintiff's

claims against defendant Eastwood are deficient.  *Richardson*, 347

F.3d at 435; *Davis*, 2004 WL 1574649, at *8-*9; *see also Shomo v. City*

*of New York*, No. 03 Civ. 10213, 2005 WL 756834, at *9 (S.D.N.Y. Apr.

4, 2005).

It is true that under certain circumstances liability on the part of a

supervisory employee, can be established through proof demonstrating

that the person knew or reasonably should have known of the existence

of constitutional violations but failed to act on information indicating that

unconstitutional acts were occurring, or through the creation of a policy

or custom under which constitutional practices have occurred.  *See*

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).  In this instance,

however, even when most generously construed, plaintiff's complaint

alleges only that defendant Eastwood was aware of other inmate

complaints of negligence on the part of Dr. Halverson.  Such

13

allegations, even if proven, would be insufficient to establish defendant

Eastwood's awareness of medical indifference of constitutional

proportions, and thus provide no basis to find supervisory liability.

## IV.    SUMMARY AND RECOMMENDATION

Plaintiff's complaint in this action, as amended, challenges the

professional competency of Dr. John Halverson, a private surgeon who

operated on his stomach, on referral from the DOCS.  While plaintiff

has incanted the phrase "deliberate indifference" in his amended

complaint, upon prompting from the court in response to his initial

complaint, that pleading is laden with allegations far more suggestive of

claims of negligence and medical malpractice.[6]

Plaintiff's claims against defendant Gregory Eastwood, the

moving defendant, are premised entirely upon his position as director of

the hospital facility at which the surgery was performed by Dr.

Halverson.  Those claims surround the hiring of Dr. Halverson and his

retention, in the face of complaints of negligence against the surgeon.

Such allegations, even when most liberally construed, fail to support a

---

[6]     From his amended complaint it appears that Banyan has commenced a
malpractice action in the New York Court of Claims, presumably advancing claims
of negligence and malpractice.  *See* Amended Complaint (Dkt. No. 4) ¶ 5.

finding of the requisite degree of personal involvement on the part of defendant Eastwood in the constitutional violations alleged claimed by plaintiff to have occurred.  It is therefore

RECOMMENDED that the motion of defendant Gregory Eastwood seeking dismissal of plaintiff's complaint against him (Dkt. No. 13) be GRANTED, and that plaintiff's complaint, as amended, be DISMISSED as against that defendant, based upon lack of personal involvement, with leave to replead.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of

this report and recommendation upon the parties by regular mail.

Dated:       March 31, 2006
             Syracuse, NY

David E. Peebles
U.S. Magistrate Judge

G:\prisoner\banyan.wpd

16